UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10 – CV- 23968 -UNGARO

MARIO DIAZ-BALART and CORRINE BROWN,

    Plaintiffs,

vs.

STATE OF FLORIDA,

    Defendant.

_____

**AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs Mario Diaz-Balart and Corrine Brown, by and through their undersigned counsel, sue Defendant. the State of Florida, and as grounds therefore would show:

1.    Plaintiffs bring this action seeking a declaratory judgment that Article III, Section 20 of the Florida Constitution is unconstitutional as well as injunctive relief prohibiting the enforcement of Article III, Section 20 of the Florida Constitution.

2.    This case is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

**PARTIES**

3.    Defendant State of Florida is one of the several states of the United States of America. The State of Florida is named as a party because this lawsuit challenges the constitutionality of Article III, Section 20 of the Florida Constitution.

4.    Plaintiff Mario Diaz-Balart is a citizen of the State of Florida and is a resident of and registered to vote in Miami-Dade County.  Since 2003, Diaz-Balart has represented the citizens of Congressional District 25 in the United States House of Representatives.  Hispanics comprise more than

50 percent of the voting-age population in Congressional District 25. In January 2011, Plaintiff Diaz-Balart will be representing the residents of Florida District 21. Hispanics comprise more than 50 percent of the voting-age population in Congressional District 21. Plaintiff Diaz-Balart is a member of a protected language minority under the Voting Rights Act of 1965, as amended. Plaintiff Diaz-Balart intends to run for Congress in 2012.

5. Plaintiff Corrine Brown is a citizen of the State of Florida and is a resident of and registered to vote in Duval County. Since 1993, Brown has represented the citizens of Congressional District 3 in the United States House of Representatives. African-Americans comprise nearly half of the voting-age population in Congressional District 3. Plaintiff Brown is a member of a protected racial minority under the Voting Rights Act of 1965, as amended. Plaintiff Brown intends to run for Congress in 2012.

## JURISDICTION AND VENUE

6. The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1346(a)(2) because it arises under the Constitution and laws of the United States.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because no real property is involved in this action and the State of Florida is situated in this judicial district.

## FACTS

8. On September 28, 2007, the Florida Department of State, Division of Elections, approved an initiative petition prepared by FairDistrictsFlorida.org for circulation that establishes new criteria for Congressional redistricting. The Congressional Petition obtained the necessary number of signatures and was certified for placement on the November 2010 general election ballot as Amendment 6.

9. At the general election held in Florida on November 2, 2010, Amendment 6 was approved by more than 60 percent of the voters casting ballots on the question.

10. Upon its receipt of more than 60 percent of the votes cast, Amendment 6 became Article III, section 20 of the Florida Constitution, which provides:

> Section 20. STANDARDS FOR ESTABLISHING CONGRESSIONAL DISTRICT BOUNDARIES
>
> In establishing Congressional district boundaries:
>
> (1) No apportionment plan or individual district shall be drawn with the intent to favor or disfavor a political party or an incumbent; and districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice; and districts shall consist of contiguous territory.
>
> (2) Unless compliance with the standards in this subsection conflicts with the standards in subsection (1) or with federal law, districts shall be as nearly equal in population as is practicable; districts shall be compact; and districts shall, where feasible, utilize existing political and geographical boundaries.
>
> (3) The order in which the standards within sub-sections (1) and (2) of this section are set forth shall not be read to establish any priority of one standard over the other within that subsection.

*See, Adv. Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries*, 2 So. 3d 175 (Fla. 2009) for the text of the language of Amendment 6.

11. Section 5 of the VRA, which applies to changes in electoral practices and procedures in five Florida counties (Collier, Hardy, Hendry, Hillsborough, and Monroe), prohibits changes that "lead to retrogression in the position of racial minorities with respect to the effective exercise of the electoral franchise." *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (quoting *Miller v. Johnson*, 515 U.S. 900, 926 (1995)). Whether a change will result in retrogression "depends on an examination of all the relevant circumstances," including "the extent of the minority group's opportunity to participate in the political process." *Id*. at 479.

12. Section 5 of the Voting Rights Act of 1965, as amended, ensures that no voting change "has the purpose or will have the effect of diminishing the ability of any citizen of the United States on

account of race or color . . . to elect their preferred candidates of choice." 42 U.S.C. § 1973c(b). Section 5 does not guarantee equality, but merely prevents backsliding, or "retrogression." The benchmark for comparison is the status quo, and not the ideal of equality.

13.   One component of the opportunity to participate in the political process is the preservation of minority incumbents in positions of legislative influence and leadership. *Id*. at 483. Thus, the VRA requires the Legislature to weigh incumbency when it assesses compliance with Section 5, and permits it to favor minority incumbents as a means of compliance.

14.   The Legislature will not be fully able to assess and protect racial minorities' opportunity to participate in the political process unless it assesses and protects the achievements of minority incumbents. Because the conflicting requirements in subsection (1) of Article III, section 20 claim equal dignity in the hierarchy of requirements, the constitutional amendment creates an irreconcilable contradiction.  This internal conflict presents a facial conflict with Section 5 of the Voting Rights Act of 1965, as amended.

15.   There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of the Legislature in drawing Congressional districts to warrant relief under 28 U.S.C. § 2201.

16.   The harm to the citizens and voters in the State of Florida, including Plaintiffs, is sufficiently real and/or imminent to warrant the issuance of a conclusive declaratory judgment usefully clarifying the legal relations of the parties.

17.   Plaintiffs have retained the undersigned counsel and have agreed to pay him a reasonable fee for his services.

## COUNT I – VIOLATION OF THE SUPREMACY AND DUE PROCESS CLAUSES
## OF THE UNITED STATES CONSTITUTION

18.     Plaintiffs repeat and realleges the allegations of paragraphs 1 through 17 as if set forth herein.

19.     The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

20.     The first clause of the Fourteenth Amendment to the United States Constitution provides:

> Section. 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. *No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws*.

Emphasis supplied.

21.     The United States Constitution delegates the task of setting the time, place, and manner of setting Congressional elections to the Legislatures of each of the several States.

22.     Article I, Section 4, Clause 1 specifically provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [sic] Senators.

23.     The authority to draw Congressional Districts falls within the ambit of "time, place and manner" authority found in Article I, Section 4, Clause 1. *See Vieth v. Jubelirer*, 541 U.S. 267, 275 (2004) (plurality opinion) ("Article I, § 4, while leaving in state legislatures the initial power to draw districts for federal elections, permitted Congress to 'make or alter' those districts if it wished.")

5

24. Congress has exercised the authority reserved to in Article I, Section 4, Clause 1. In The Apportionment Act of 1842, 5 Stat. 491, Congress provided that Representatives must be elected from single-member districts "composed of contiguous territory." Congress again imposed these requirements in The Apportionment Act of 1862, 12 Stat. 572, and in 1872 further required that districts "contai[n] as nearly as practicable an equal number of inhabitants," 17 Stat. 28, § 2. In The Apportionment Act of 1901, Congress imposed a compactness requirement. 31 Stat. 733. The requirements of contiguity, compactness, and equality of population were repeated in the 1911 apportionment legislation, 37 Stat. 13, but were not thereafter continued. Today, only the single member-district requirement remains. See 2 U. S. C. § 2c.

25. Article III, Section 20 of the Florida Constitution represents an impermissible effort by Florida to limit the discretion directly delegated by the United States Constitution to the Florida Legislature.

26. Under Article 1, Section 4, Clause 1, the discretion to set the time, place, and manner of holding Congressional elections belongs to the Florida Legislature. That discretion may only be limited or circumscribed by the Congress and not by way of an amendment to the Florida Constitution.

27. Article III, Section 20 may not immediately and unconditionally be enforced unless and until Congress authorizes circumscription of the Florida Legislature's power to set the time, place and manner of Congressional elections, including drawing districts.

28. Accordingly, Article III, Section 20 of the Florida Constitution violates the Supremacy Clause and is invalid.

29. A violation of the United States Constitution may be challenged pursuant to 42 U.S.C. § 1983.

**COUNT II – PREEMPTION UNDER FEDERAL LAW**

30. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 17 and 19 through 29 as if set forth herein.

31. Article III, Section 20 of the Florida Constitution is preempted by Article I, Section 4, Clause 1 of the United States Constitution.

32. Article III, Section 20 of the Florida Constitution is also preempted by Section 5 of the Voting Rights Act of 1965, as amended, and the regulations promulgated thereunder.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Enter an order declaring that Article III, Section 20 of the Florida Constitution is unconstitutional on its face as an attempt to circumscribe the Constitutional discretion that devolves from Article I, Section 4, Clause 1 of the United States Constitution to the Florida Legislature to set the time, place, and manner of Congressional elections, including the drawing of Congressional districts;

B. Enter an order declaring that Article III, Section 20 of the Florida Constitution is unconstitutional on its face as being in direct violation of Section 5 of the Voting Rights Act of 1965, as amended, and the regulations promulgated thereunder;

C. Enjoin Defendant and any other agency or official acting on behalf of Defendant from enforcing Article III, Section 20 of the Florida Constitution;

D. Award Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 by and through 42 U.S.C. § 1983 and 28 U.S.C. § 1343; and

E. Grant such other relief as the Court deems just and proper.

STEPHEN M. CODY, ESQ.
16610 SW 82 Court
Palmetto Bay, FL 33157
Telephone: (305) 753-2250
Fax: (305) 468-6421
Email: stcody@stephencody.com

_/s/ Stephen M. Cody_
Fla. Bar No. 334685