UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CV-23968-UNGARO

MARIO DIAZ-BALART and
CORRINE BROWN,

    Plaintiffs,

and

THE FLORIDA HOUSE OF
REPRESENTATIVES,

    Plaintiff-Intervenor,

v.

KURT S. BROWNING,
in his official capacity as Secretary of
State of Florida,

    Defendant,

and

FLORIDA STATE CONFERENCE OF
NAACP BRANCHES, *et al*.,

    Intervening Defendants.
_____/

## DEFENDANT SECRETARY'S REPLY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, Kurt S. Browning in his official capacity as Secretary of State of Florida ("Secretary"), pursuant to the Court's scheduling order, submits this reply memorandum in support of the Secretary's Cross-Motion for Summary Judgment (Doc. 72).

### I. INTRODUCTION.

Amendment 6, now Article III, Section 20 of the Florida Constitution, serves as a check in the legislative process for congressional redistricting by imposing standards for the legislature

to follow in carrying out its duty to draw congressional districts. Plaintiffs' contend that state constitutional provisions, like Article III, Section 20, are invalidated by the Elections Clause unless they are "enacted as part of the legislative process" and the legislature plays a role in their adoption. (Doc. 67, p. 2). To reach this conclusion, Plaintiffs misinterpret *Smiley v. Holm,* 285 U.S. 355, 371 (1932) and *Ohio ex rel. Davis v. Hildebrant,* 241 U.S. 565, 569 (1916), as requiring state constitutional amendments impacting the legislative redistricting process to be enacted through the legislative process and with support of the legislature itself.

Contrary to Plaintiffs' contention, the Supreme Court in *Smiley* and *Hildebrant* did not focus on whether the state constitutional provisions restricting the state legislature's lawmaking power to adopt redistricting legislation were enacted as part of the legislative process. Rather, the Supreme Court focused on whether the state constitutional provisions, once enacted, were made part of the state legislative process and lawmaking power, as that process and power is defined by the state constitution.

## II. ARTICLE III, SECTION 20 IS A VALID CONSTITUTIONAL CHECK IN THE LEGISLATURE'S CONGRESSIONAL REDISTRICTING PROCESS.

Plaintiffs' correctly point out that Amendment 6 was not enacted through the ordinary legislative process. Constitutional amendments are never enacted through the ordinary legislative process, as there are fundamental differences between ordinary legislation and constitutional provisions, and there are, by constitutional design, distinct procedures for amending the Florida Constitution and enacting Florida Statutes. *Compare* Fla. Const. art. III (prescribing the process for legislative enactments) *with id*. art. XI. (prescribing the process for amending the Constitution). That does not mean, however, that Article III, Section 20 is not "part of the legislative process" or "legislative power" as those phrases are used in *Smiley* and

*Hildebrant*. Just as the constitutional provisions at issue in *Smiley* and *Hildebrant*, Article III, Section 20 was made part of the legislative power and process by constitutional fiat.

**A. *Smiley* and *Hildebrant* Did Not Hinge on Whether the Constitutional Provisions at Issue Were Enacted Outside the Legislative Process and Without the Support of the Legislature.**

At the outset, Plaintiffs confuse redistricting measures (legislation establishing congressional boundaries themselves) and constitutional checks in the legislative process for adopting redistricting measures. Contrary to Plaintiff's suggestion, Amendment 6 itself is not a "redistricting measure." Indeed, Amendment 6 does not redistrict the state or establish any congressional boundaries. Rather, Amendment 6 operates as a constitutional check in the legislative process for adopting future redistricting measures. The Supreme Court, in *Smiley*, clearly distinguishes state constitutional checks in the legislative process (such as Amendment 6) from ordinary legislative enactments reapportioning congressional districts (i.e., redistricting measures). This distinction is critical to the Elections Clause analysis and one that Plaintiffs fail to address.

In *Smiley*, the Supreme Court squarely addressed whether a state legislature's redistricting measure must comport with state constitutional checks in legislative power. At issue in *Smiley* was House File No. 1456 (a specific redistricting measure drafted by the Minnesota Legislature dividing the state into nine congressional districts) and Article 4, Section 11 of the Minnesota Constitution (a state constitutional check in the legislative process that subjected all legislative bills to gubernatorial veto). 285 U.S. 355, 361. As phrased by the U.S. Supreme Court, the precise question presented in *Smiley* was:

> [W]hether [Article I, Section 4] of the Federal Constitution, thus regarded as determinative, invests the Legislature with a particular authority, and imposes upon it a corresponding duty, the definition of which imports a function different

3

>from that of lawgiver, and thus renders inapplicable the conditions which attach to the making of state laws.

*Id*. at 365.  In other words, the Court questioned whether the Elections Clause requires state legislatures to do something other than make law and, if so, then the "conditions which attach to the making of state laws" (i.e., state constitutional checks on legislative power), would be inapplicable.  The Court determined that the Elections Clause authorizes state legislatures "to provide a complete code for congressional elections" which, in its view "involves lawmaking in its essential features and most important aspects."  *Id*. at 366.  The Court therefore concluded that when the legislature enacts a redistricting measure such as House File No. 1456, it is acting as a law giver and, when it does so, it must abide by the checks and limitations provided in the state constitution.  *Id*. at 367-68.

Plaintiffs correctly cite *Smiley* for the proposition that "the exercise of authority [granted by the Elections Clause] must be in accordance *with the method which the state has prescribed for legislative enactments*." (Doc. 76, p. 3).  Indeed, the Supreme Court held that the Minnesota Legislature was required to comply with the constitutionally prescribed method for legislative enactments when enacting House File No. 1456.  What Plaintiffs ignore, however, is the Supreme Court's analysis in the paragraph that follows, wherein the Court emphasized that state constitutional checks which impact the legislature's redistricting legislation do not violate the Elections Clause:

>We find no suggestion in the federal constitutional provision of an attempt to endow the Legislature of the state with power to enact laws in any manner other than that in which the Constitution of the state has provided that laws shall be enacted. Whether the Governor of the state, through the veto power, shall have a part in the making of state laws, is a matter of state polity. Article 1, s. 4 of the Federal Constitution neither requires nor excludes such participation.  And provision for it, as a check in the legislative process, cannot be regarded as repugnant to the grant of legislative authority.

*Id*. at 367-68.  At no point in the case did the Court qualify this conclusion to require the state constitutional checks to be, as Plaintiffs contend, "adopted" or "enacted as part of the legislative process."  Indeed, the Court did not address the manner in which the constitutional provision at issue was adopted and there is no indication whatsoever that Article 4, Section 11 of the Minnesota Constitution was enacted through the ordinary legislative process.  Rather, it was House File No. 1456 that had to be enacted through the legislative process – however that process was defined in the state constitution.

Plaintiffs therefore misstate the Supreme Court's holding in *Smiley* when they claim that constitutional checks on legislative power must be "enacted 'as part of the legislative process.'" (Doc. 76 at 2).  The language "as part of the legislative process" on which Plaintiffs rely was taken from *Smiley* at page 371, but is taken out of context.  At that page of the opinion, the Court was addressing a federal statute, The Act of August 8, 1911, and was explaining its earlier holding in *Hildebrant* where it held that a referendum, enacted through constitutional amendment, was applicable to congressional redistricting legislation.  *Hildebrant*, 241 U.S. 565.

In *Smiley*, the Supreme Court explained that Congress, in the Act of August 8, 1911, "definitely recognized" "that the [Elections Clause] contemplates the exercise of lawmaking power."  285 U.S. at 371.  Section 4 of the Act of August 8, 1911 addressed congressional redistricting and stated in pertinent part:

> That in case of an increase in the number of Representatives in any State under this apportionment such additional Representative or Representatives shall be elected by the State at large and the other Representatives by the districts now prescribed by law until such State shall be redistricted <u>in the manner provided by the laws thereof</u> and in accordance with the rules enumerated in section three of this Act; . . . .

5

*Id*. at 362, n.1, 371 (emphasis added). At page 371 of *Smiley*, the Court was addressing the significance of the language "in the manner provided by the laws thereof" contained in the federal statute. Specifically, the Court stated:

> The significance of the clause "in the manner provided by the laws thereof" is manifest from its occasion and purpose. It was to recognize the propriety of the referendum in establishing congressional districts <u>where the state had made it a part of the legislative process</u>.

*Id*. at 371 (emphasis added). Plaintiffs read this passage and interpret it to mean that Article III, Section 20 of the Florida Constitution violates the Elections Clause because the state legislature had no role in its adoption and it was not enacted or adopted "as part of the legislative process." (Doc. 76, p. 2); accord *id*. at 8 ("the question is whether Amendment Six was adopted as part of the legislative process"). However, the Court in *Smiley* did not address the manner of adoption of the constitutional provision at issue, nor did it indicate that the constitutional provision had to be adopted as part of the legislative process or with the support of the legislature. What the Supreme Court said at page 371 of *Smiley* was that the constitutional provision at issue had to be made a part of the legislative process, not that it had to be made via the legislative process.

*Hildebrant* does not change this analysis. The Supreme Court, in *Hildebrant*, never refers to the "legislative process" in considering the validity of the constitutional amendment at issue in that case. Instead, the Court addressed only whether the constitutional amendment "was treated as part of the legislative power" under the provisions of the Ohio State Constitution. Finding that it was, the Court held that the referendum should be treated to be the state legislative power for the purpose of creating congressional districts by law."[1] *Id*. at 568.

---

[1] Although the Ohio Constitution contained a provision stating that the legislative power shall be vested in the people of the state, the Minnesota Constitution (at issue in *Smiley*) did not contain a provision expressly vesting the state's legislative power in the governor. Minn. Const., art. 4, s. 11. The absence of an express provision granting "legislative authority" in the governor did not

By stating that the constitutional amendment "was *treated* as part of the legislative power," the *Hildebrant* Court was not stating that the constitutional amendment had to be *enacted* as part of legislative process. Indeed, if Plaintiffs interpretation is correct, and a constitutional restriction on the legislature's redistricting authority must be enacted as part of the legislative process and with the support of the legislature in order to avoid violating the Elections Clause, then the Supreme Court in *Hildebrant* would have invalided the referendum provision in the case before it. In *Hildebrant*, the referendum provision was not adopted by an act of the legislature but instead was adopted as a constitutional amendment via the Ohio Constitutional Convention of 1912 and ratified by the voters thereafter. *Id*. at 566. The Supreme Court upheld the constitutional restriction on the legislature's power to reapportion congressional districts notwithstanding that the restriction was enacted via constitutional amendment and, as Plaintiffs contend, outside the legislative process.

**B. As a Check in Legislative Authority, Article III, Section 20 Is Part of the Florida Legislative Process.**

The Florida electorate, the repository of all political power in Florida, changed the legislative process for congressional redistricting by enacting Amendment 6, which is now Article III, Section 20 of the Florida State Constitution. Plaintiffs recognize that a state's legislative processes are defined in a state's constitution. (Doc. 76, p. 4). Article III of the Florida Constitution and the twenty articles within it define the legislative power and processes in Florida. Section 20 of Article III is no less a part of and a check in the legislative process and power because it was adopted as an amendment to Article III, without the legislature having any

---

prevent the Minnesota polity from permitting the governor to serve as a check in the legislative process. Similarly, that the Florida Constitution vests the legislative power in the state legislature does not prevent the Florida polity from establishing standards to serve as a check in the legislature's exercise of that power.

7

role in its adoption. Article III, Section 20 of the Florida Constitution, similar to Article 4, Section 11 of the Minnesota Constitution in *Smiley,* is part of the Florida legislative process because it is a restriction and limitation on the legislature's law making authority and it is contained within the Florida State Constitution in the article establishing and defining the State's legislative power and legislative processes.

Plaintiffs nonetheless argue that, unlike the gubernatorial veto in *Smiley*, Amendment 6 itself regulates the manner of holding elections for Congress. (Doc. 76, p. 9). Just as Plaintiffs misinterpret the holding in *Smiley* and *Hildebrant*, Plaintiffs misinterpret the effect of Amendment 6. Amendment 6 does not regulate the manner of holding elections. Amendment 6 does nothing more than establish criteria for the Florida Legislature to follow in creating redistricting laws that do regulate elections for Congress. Amendment 6 is nothing more than a constitutional check in the legislative process that the Florida Legislature must adhere to in carrying out its lawmaking powers of the type referred to in *Smiley*.

Although Plaintiffs admit that the state constitution defines the legislative process (Doc. 76, p. 4), Plaintiffs argue that because Amendment 6 applies only to congressional redistricting legislation, it is unlike other sections within Article III that apply more broadly and, therefore, cannot be considered to form part of the legislative process. (Doc. 76, p, 10). Plaintiffs, however, cite to no authority for this novel interpretation of how a court is to determine which sections within Article III establish the state's legislative power and processes and which do not. A review of Article III reveals numerous sections that deal with a particular type of legislation and limit the legislature's authority with regard to the enactment of such laws. For instance, Sections 10 and 11 of Article III apply only to the legislature's law making authority with regard to special laws. Section 12 of Article III addresses only restrictions on appropriation bills, and

8

Section 19 only addresses budget bills. Each of these single subject sections within Article III, like Section 20, constitutes a check in the legislative process. Suffice it to say, all of the sections within Article III establish the legislative power and processes of the state. And, nothing in the Elections Clause or in the Supreme Court's interpretations thereof prevents a state from establishing a constitutional check that applies only to the congressional redistricting process.

### C. Plaintiffs Mischaracterize the Supremacy of the Florida Constitution With Respect to Congressional Redistricting Under the Elections Clause.

Plaintiffs argue that the Elections Clause delegation displaces Florida's ordinary authority over its state legislature and the lawmaking processes of the state. (Doc. 76, p. 8). To support their position, Plaintiffs cite *Trombetta v. State of Florida*, 353 F.Supp. 575 (M.D. Fla. 1973), and point out that "Florida's authority in ratifying federal constitutional amendments is not subject to restrictions in the state constitution, notwithstanding its status as the 'supreme law of the state.'" (Doc. 76, p. 9). Given that the Supreme Court has clearly distinguished between the authority granted by the Elections Clause and the authority granted by Article V of the U.S. Constitution, Plaintiffs' reliance on *Trombetta* is entirely misplaced.

As explained in the Secretary's Cross-Motion for Summary Judgment, the Elections Clause is one of many constitutional provisions granting federal authority to the state "legislature," and, to understand the nature of the delegation in each particular provision, it is necessary to consider "the function to be performed."[2] *Smiley*, 285 U.S. at 365. Where the Federal Constitution calls upon the state legislature to engage in lawmaking, a state constitution's supremacy as to legislative authority remains intact. *Id*. at 365-69 (holding that where the Federal Constitution "imports a function" of "lawgiver," state constitutional

---

[2] For a more complete exposition of the Supreme Court's function-based analysis for discerning the breadth of authority conferred in each U.S. constitutional provision granting authority to the state "legislature," see the Secretary's Cross-Motion for Summary Judgment pages 5-6.

9

"conditions which attach to the making of state laws" "cannot be regarded as repugnant to the grant of legislative authority"). Where, however, as in the case of Article V, the legislature is required to act as a ratifying body, rather than a lawmaking body, state constitutional limitations on legislative authority do not apply. *Id*. at 365-66 (recognizing that the legislature "may act as a ratifying body, as in the case of proposed amendments to the Constitution under [A]rticle 5" and distinguishing ratification function from lawmaking function); *Hawke v. Smith*, 253 U.S. 221 (1920) (holding that "ratification by a state of a constitutional amendment is not legislation in the proper sense of the word" and, therefore, that state constitutional limitations on the legislature's ratification authority do not apply). Indeed:

> Article I, section 4, plainly gives authority to the state to legislate within the limitations therein named. Such legislative action is entirely different from the requirement of the Constitution as to the expression of assent or dissent to a proposed amendment to the Constitution. In such expression no legislative action is authorized or required.

*Smiley*, 285 U.S. at 372. Plaintiffs are therefore correct that "the Legislature's function in ratifying federal amendments . . . transcends any limitations sought to be imposed by the people of a state." (Doc. 67, p. 9). The Legislature's function in reapportioning congressional districts, however, does not transcend constitutional limitations, and "that the state Legislature might be subject to such limitation[s] . . . as the several states might think wise," is not "incongruous with the grant of legislative authority to regulate congressional elections." *Smiley*, 285 U.S. at 368.

### III. Conclusion.

The Florida Legislature is obligated to comport with constitutional limitations on its lawmaking authority. As a duly enacted provision of the Florida Constitution, Article III, Section 20 is part of the Florida legislative process and is a valid check in the Legislature's authority to reapportion congressional districts.

Dated: June 24, 2011                    Respectfully submitted,

                                                            s/Harry O. Thomas
Harry O. Thomas (Fla. Bar No. 195097)
hthomas@radeylaw.com
Radey, Thomas, Yon & Clark, P.A.
301 S. Bronough Street, Suite 200 (32301)
Post Office Box 10967
Tallahassee, Florida  32302-2967
Telephone:     (850) 425-6654
Facsimile:     (850) 425-6694

ATTORNEYS FOR DEFENDANT
KURT S. BROWNING, in his Official Capacity
as Florida Secretary of State

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was electronically served through the Court's CM/ECF system, unless otherwise noted, this 24th day of June, 2011, to the following:

**Stephen M. Cody** (334685)
stcody@stephencody.com
16610 SW 82 Court
Palmetto Bay, Florida  33157
Telephone:     305-753-2250
Facsimile:     305-468-6421
*Attorney for Plaintiffs*
*Mario Diaz-Balart and Corrine Brown*

**George N. Meros, Jr.** (263321)
gmeros@gray-robinson.com
**Allen C. Winsor** (016295)
awinsor@gray-robinson.com
Gray Robinson PA
301 S. Bronough Street, Suite 600
Tallahassee, Florida  32301
Telephone:     (850) 577-9090
Facsimile:     (850) 577-3311
*Attorneys for Intervening Plaintiff,*
*Florida House of Representatives*

**Miguel De Grandy** (332331)
mad@degrandylaw.com
800 Douglas Road, Suite 850
Coral Gables, Florida 33134-2088
Telephone:     305-444-7737
Facsimile:     305-443-2616
*Attorneys for Intervening Plaintiff,*
*Florida House of Representatives*

**Randall C. Marshall** (181765)
rmarshall@aclufl.org
American Civil Liberties Union
 Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, Florida  33137-3227
Telephone:     786-363-2700
Facsimile:     786-363-1108
          -and-

**Moffatt Laughlin McDonald**
lmcdonald@aclu.org
American Civil Liberties Union
 Foundation, Inc.
230 Peachtree St., N.W., Suite 1440
Atlanta, Georgia   30303-1227
Telephone:     (404) 523-2721
Facsimile:     (404) 653-0331
*Attorneys for Defendants*
*ACLU of Florida, Howard Simon,*
*Susan Watson, Joyce Hamilton Henry,*
*and Benetta Standly*

**Michael B. DeSanctis**
mdesanctis@jenner.com
**Paul M. Smith**
psmith@jenner.com
Jenner & Block, LLP
1099 New York Avenue, NW
Washington, DC   20001
Telephone:     202-639-6000
Facsimile:     202-639-6066
          -and-
**Charles G. Burr** (0689416)
Burr & Smith, LLP
442 W. Kennedy Blvd., Suite 300
Tampa, FL   33606
Telephone:     813-253-2010
Facsimile:     813-254-8391
          -and-
**J. Gerald Hebert**
GHebert@campaignlegalcenter.org
191 Somervelle Street, #405
Alexandria, VA  22304
Telephone:     703-628-4673
Facsimile:     703-567-5876
          -and-

**Stephen Frederick Rosenthal** (0131458)
srosenthal@podhurst.com
Podhurst Orseck Josefsberg, et al.
City National Bank Building
25 W. Flagler St., Suite 800
Miami, Florida  33130-1780
Telephone:     305-358-2800
Facsimile:      305-358-2382
*Attorneys for Intervening Defendants*
*Leon W. Russell, Patricia T. Spencer,*
*Carolyn H. Collins, Edwin Enciso,*
*Stephen Easdale, Florida State*
*Conference of NAACP Branches,*
*and Democracia Ahora*

**Stuart H. Singer** (377325)
ssinger@bsfllp.com
**Carl Edward Goldfarb** (125891)
cgoldfarb@bsfllp.com
Boies, Schiller, and Flexner, LLP
401 E. Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida  33301
Telephone:     954-356-0011
Facsimile:      954-356-0022
            -and-

**Jon L. Mills** (148286)
jmills@bsfllp.com
Boies, Schiller, and Flexner, LLP
100 S.E. Second Street, Suite 2800
Miami, Florida  33131
Telephone:     305-539-8400
            -and-
**Karen C. Dyer** (716324)
kdyer@bsfllp.com
**Gary K. Harris** (0065358)
gharris@bsfllp.com
Boies, Schiller & Flexner LLP
121 S. Orange Avenue, Suite 840
Orlando, Florida  32801
Telephone:     407-425-7118
Facsimile:      407-425-7047
            -and-
**Joseph W. Hatchett** (34486)
joseph.hatchett@akerman.com
Akerman Senterfitt
106 East College Avenue, 12th Floor
Tallahassee, Florida  32301
Telephone:     850-224-9634
Facsimile:      850-222-0103
*Attorneys for Intervening Defendants*
*Janet Cruz, Arthenia L. Joyner,*
*Luis R. Garcia, Joseph A. Gibbons,*
*and Perry E. Thurston*

            s/Harry O. Thomas
Harry O. Thomas