# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MARIO DIAZ-BALART and CORRINE BROWN, ) ) ) Plaintiffs, ) ) FLORIDA HOUSE OF ) REPRESENTATIVES, ) ) Plaintiff-Intervenor, ) ) vs. ) ) KURT BROWNING, in his official capacity ) as Florida Secretary of State, ) ) Defendant, ) ) and ) ) FLORIDA STATE CONFERENCE OF ) NAACP BRANCHES; DEMOCRACIA ) AHORA; LEON W. RUSSELL, ) PATRICIA T. SPENCER, CAROLYN H. ) COLLINS, EDWIN ENCISO, ) STEPHEN EASDALE; THE AMERICAN ) CIVIL LIBERTIES UNION OF FLORIDA; ) HOWARD SIMON, BENETTA M. ) STANDLY, SUSAN WATSON, JOYCE ) HAMILTON HENRY; JANET CRUZ; ) ARTHENIA JOYNER; LUIS R. GARCIA; ) JOSEPH A. GIBBONS; PERRY E. ) THURSTON, ) ) Defendant-Intervenors. ) ) | Case No. 10-CV-23968-UNGARO |

### DEFENDANT-INTERVENORS' CONSOLIDATED REPLY IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
### AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

I.   *SMILEY* AND *HILDEBRANT* SUPPORT DEFENDANTS' POSITION THAT ARTICLE III, SECTION 20 IS PART OF THE LEGISLATIVE PROCESS THAT GOVERNS CONGRESSIONAL REDISTRICTING IN FLORIDA. ...................... 1

    A.   *Smiley* and *Hildebrant* hold that legislatures must comply with their own constitutions. ................................................................................................... 2

    B.   Plaintiffs' position would improperly result in complete autonomy for the legislature in congressional redistricting. ................................................. 4

II.  ARTICLE III, SECTION 20 WAS LAWFULLY ADOPTED. .......................................... 6

    A.   *Smiley* and *Hildebrant* support a broad interpretation of the state legislative process, and the citizen initiative is part of Florida's legislative process ........................................................................................................ 7

    B.   The initiative power was proposed by the legislature, making it closer to the legislative process than the people's veto upheld in *Hildebrant*. ...................... 9

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Advisory Opinion to Attorney General Limited Marine Net Fishing*, 620 So. 2d 997 (Fla. 1993) ............................................................................................................................... 7

*In re Advisory Opinion to Attorney General ex rel. Limiting Cruel & Inhumane Confinement of Pigs During Pregnancy*, 815 So. 2d 597 (Fla. 2002) ....................................... 8

*Brady v. New Jersey Redistricting Commission*, 622 A.2d 843 (N.J. 1992) ................................. 6

*Browning v. Florida Hometown Democracy, Inc.*, 29 So. 3d 1053 (Fla. 2010) ........................ 7, 8

*Bush v. Holmes*, 919 So. 2d 392 (Fla. 2006) ................................................................................. 5

*Chiles v. Phelps*, 714 So. 2d 453 (Fla. 1998) ................................................................................ 5

*Cook v. Gralike*, 531 U.S. 510 (2001) ........................................................................................... 5

*Crist v. Florida Ass'n of Criminal Defense Lawyers, Inc.*, 978 So. 2d 134 (Fla. 2008) .................. 9

*Lane v. Chiles*, 698 So. 2d 260 (Fla. 1997) ............................................................................... 3, 9

*Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916) ............................................................. 3, 6

*Savage v. Board Of Public Instruction for Hillsborough County*, 133 So. 341 (Fla. 1931) ............ 5

*Shaw v. Reno*, 509 U.S. 630 (1993) ............................................................................................. 10

*Smathers v. Smith*, 338 So. 2d 825 (Fla. 1976) ............................................................................. 5

*Smiley v. Holm*, 285 U.S. 355 (1932) .................................................................................... 3, 4, 7

*Smith v. Clark*, 189 F. Supp. 2d 548 (S.D. Miss. 2002), *aff'd*, 538 U.S. 254 (2003) ...................... 9

*Trombetta v. Florida*, 353 F. Supp. 575 (M.D. Fla. 1973) ............................................................ 7

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ........................................................... 10

*Vieth v. Jubelirer*, 541 U.S. 267 (2004) ........................................................................................ 6

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. I, § 4 ..................................................................................................................... 1

## INTRODUCTION

The Elections Clause states that the "[t]he Times, Places and Manner *of holding Elections* for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. CONST. art. I, § 4 (emphasis added). Here, the Florida legislature will adopt a redistricting plan that will prescribe the manner in which its state will hold elections for its congressional representatives. In so doing, the legislature obviously is bound by the state constitution. As the governing Supreme Court cases make clear, that is the end of the inquiry. Article III, Section 20 of the Florida Constitution was validly – and overwhelmingly – adopted by the people of the State of Florida as part of the state's constitution. It is now an integral part of the state's legislative process. As a result, the Elections Clause not only permits the legislature to honor and abide by that constitutional provision, *it demands it*.

Plaintiffs make a number of key concessions in their brief. They admit that a constitutional provision governing redistricting need not have been adopted by the legislature itself to be valid under the Elections Clause. Doc. 76 at 3. They likewise concede that governing Supreme Court precedent includes examples of lawful provisions governing congressional elections that were not adopted by the legislature. *Id*. at 3 & n.1, 13. Plaintiffs go on to argue, however, that *in this case* to be valid under the Elections Clause, the provision at issue must have been passed by the sitting legislators. *Id.* at 17. There is no support whatsoever for that novel position in the U.S. Constitution, federal statutes, Supreme Court precedent, or the laws of the State of Florida.

I.     *SMILEY* AND *HILDEBRANT* SUPPORT DEFENDANTS' POSITION THAT ARTICLE III, SECTION 20 IS PART OF THE LEGISLATIVE PROCESS THAT GOVERNS CONGRESSIONAL REDISTRICTING IN FLORIDA.

Importantly, Plaintiffs do not contend that the Elections Clause requires that any provision bearing on redistricting be enacted by the legislature. Doc. 76 at 3. Despite this

1

critical admission, they nevertheless assert that the people of Florida may not require their legislature to follow redistricting standards adopted through a constitutionally authorized initiative process. Neither *Smiley* nor *Hildebrant* comes close to saying, as Plaintiffs allege, that the Elections Clause does not allow the people of a state to pass a constitutional amendment that guides the process by which the legislature engages in redistricting. Rather, *Smiley* and *Hildebrant* stand for the proposition that a redistricting plan must be produced in accordance with the legislative process of the state as defined by the state's constitution. Where a state constitution prescribes a process by which laws must be made, a redistricting plan produced in accordance with that process is presumptively valid under the Elections Clause. That is the simple case here. The legislature is required to comply with the Florida constitution.

> **A.** ***Smiley* and *Hildebrant* hold that legislatures must comply with their own constitutions.**

Defendant-Intervenors agree with Plaintiffs that "*Smiley* and *Hildebrant* provide the Court's definitive interpretation" of the Elections Clause, Doc. 76 at 3, and that the "essential teaching of *Hildebrant* and *Smiley* is that regulations of congressional elections must be enacted through a state's legislative process, *as that process is defined by the state constitution*," *id*. at 8 (emphasis added). Plaintiffs are also correct that the Supreme Court in those cases upheld certain procedures "because they were part of the states' legislative process—as defined in each state's constitution." *Id*. at 4. Given these concessions, because Article III, Section 20 was validly adopted and is now part of the legislative process of the state – indeed, it literally is part of the legislative article of the constitution – Defendants are entitled to summary judgment.

**First**, according to *Smiley* and *Hildebrant,* the relevant inquiry under the Elections Clause is the legislative process by which the state redistricting plan becomes law. Plaintiffs ignore that *Smiley* and *Hildebrant* were both concerned with the enactment of actual redistricting

2

plans – the plans that would then govern the manner of "holding elections" for congressional representatives in those states. In both cases, the operative question for the Supreme Court was not how the constitutional provisions at issue – the popular veto and the gubernatorial veto – came to be, but whether, *given their valid existence in the state constitution*, they were part of the state's "legislative process" in enacting a redistricting plan. Those cases hold that the states, through their constitutions, define their own lawmaking practices, including how redistricting plans may be validly enacted. As these cases make clear, the Florida legislature must comply with the Florida constitution when enacting its redistricting plan, and the federal Elections Clause does not require otherwise.

**Second**, *Smiley* and *Hildebrant* firmly establish that it is the state, *and by extension its citizens*, that determines "what should constitute its legislative process" when engaging in redistricting. *Smiley v. Holm,* 285 U.S. 355, 372 (1932). That is precisely what the citizens of Florida did when they passed Article III, Section 20. By placing standards in the state constitution to guide the legislature as it carries out its duty of congressional redistricting, the state of Florida has defined its own "method … for legislative enactments." *Id.* at 368. Specifically, it has defined the legislative process with respect to congressional redistricting plans. That is obviously permissible under the Elections Clause.

**Finally**, *Smiley* and *Hildebrant* demonstrate that a state is unquestionably bound by its constitution in enacting a redistricting plan. Indeed, Plaintiffs concede, as they must, that "regulations of congressional elections must be enacted through a state's legislative process, *as that process is defined by the state constitution*." Doc. 76 at 8 (emphasis added); *see Smiley*, 285 U.S. at 367, *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 567–68 (1916). The state constitution is "the supreme law of Florida," *Lane v. Chiles*, 698 So. 2d 260, 263 (Fla. 1997), and

3

prescribes the method for legislative enactments in Florida. Article III, Section 20 is a part of the constitution and prescribes the method for legislative enactments of congressional redistricting plans. As the Supreme Court has made clear, there is "no suggestion in the federal constitutional provision of an attempt to endow the Legislature of the state with power to enact laws in any manner other than that in which the Constitution of the State has provided that laws shall be enacted." *Smiley*, 285 U.S. at 368.

In sum, just as with any other legislative enactment in Florida, Florida's redistricting plan will have to comply with the legislative process as described in the state constitution. In *Hildebrant*, that process included subjecting the redistricting plan to a public referendum. In *Smiley*, that process included subjecting the redistricting plan to a gubernatorial veto. In Florida, that process includes subjecting the redistricting plan to the standards set by Article III, Section 20. While engaging in that process, the legislature is required to follow validly adopted state constitutional provisions. This is obvious and never has been questioned by the Supreme Court. To the contrary, it has been repeatedly reaffirmed.

### B. Plaintiffs' position would improperly result in complete autonomy for the legislature in congressional redistricting.

The logical conclusion to be drawn from Plaintiffs' arguments is that the legislature operates autonomously and can have no state constitutional constraints in congressional redistricting policy. Indeed, their complaint states that the legislature has "plenary and exclusive" authority under the Elections Clause, House Intervenor Compl. ¶ 12, Doc. 34, and that the legislature's discretion "may only be limited or circumscribed by the Congress and not by way of an Amendment to the Florida Constitution," Second Amend. Compl. ¶ 23, Doc. 36.1. That position is unsupported by Supreme Court or Florida precedent.

As the Florida Supreme Court has held, the state constitution is "a document of limitation

4

by which the people of the state have restricted the forces of government." *Smathers v. Smith*, 338 So. 2d 825, 827 (Fla. 1976). Indeed, "[t]he Constitution of this state is not a grant of power to the Legislature, but a limitation upon legislative power." *Chiles v. Phelps*, 714 So. 2d 453, 458 (Fla. 1998); *see also Bush v. Holmes*, 919 So. 2d 392, 407 (Fla. 2006); *Savage v. Bd. Of Public Instruction for Hillsborough Cty.*, 133 So. 341, 344 (Fla. 1931). The federal Elections Clause has not – and cannot – be read to permit the legislature to ignore validly enacted constitutional provisions. Yet this is precisely what Plaintiffs ask this court to do.[1]

Plaintiffs' attempt to recast their original argument does not save it. In their brief, Plaintiffs concede that "[t]he voters of Florida have every right to determine how federal districts are drawn," Doc. 76 at 17, but then go on to argue that the only way voters can exercise that right is "through their representatives," *id*. Even accepting that argument, which, as explained above, has absolutely no basis in precedent, Plaintiffs' argument produces an absurd result.[2] If voters' only recourse to correct injustices committed *by their representatives in the legislature* is "*through their representatives*" as Plaintiffs argue, Doc. 76 at 17, then voters have no recourse at all. Plaintiffs recognize that state legislatures have a historical pattern of behaving badly in the redistricting context, Doc. 76 at 14 n.9, yet their reinterpretation of the Elections Clause allows the Florida legislature to ignore the clear intentions of its citizens while redistricting. Moreover, if Plaintiffs' argument is given effect – that the legislature itself must play a part in the creation

---

[1] Plaintiffs' reliance on *Cook v. Gralike* is to no avail. 531 U.S. 510 (2001). In that case, the Supreme Court endorsed measures intended to keep elections "fair and honest," and that are designed to "protect the integrity … of the electoral process itself." *Id.* at 524 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974) and *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)). That is precisely what Article III, Section 20 does.

[2] Similarly unavailing is Plaintiffs' contention that Article III, Section 20 is not part of the legislative process because it was adopted "over the Legislature's opposition." Doc. 76 at 2. But Plaintiffs acknowledge that both the people's veto at issue in *Hildebrant* and the gubernatorial veto at issue in *Smiley* are part of the legislative process, despite the fact that these provisions were employed in opposition to the legislatures.

5

of a redistricting map – independent redistricting commissions nationwide would be invalidated. Such commissions have been recognized as a solution for a "civically-minded electorate" that has grown "tir[ed] of the political boundary-drawing rivalry" during redistricting. *Vieth v. Jubelirer*, 541 U.S. 267, 362 (2004) (Breyer, J., dissenting). No court – *not one* – has held these independent commissions to be in violation of the Elections Clause. *See Brady v. N.J. Redistricting Comm'n*, 622 A.2d 843, 849-850 (N.J. 1992) (rejecting an Elections Clause challenge to New Jersey's redistricting commission).[3]

## II. ARTICLE III, SECTION 20 WAS LAWFULLY ADOPTED.[4]

As discussed above, the relevant inquiry under the case law is whether Article III, Section 20 is a part of the state's legislative process. And it unquestionably is – Article III being dedicated exclusively to the legislature and the legislative process. Nevertheless, even if it were the case that Article III, Section 20 itself must have been *enacted* as part of the "legislative process" to survive an Elections Clause challenge, Plaintiffs still lose because Article III, Section 20 was indeed adopted as part of the legislative process that Florida has established. Contrary to Plaintiffs' claims, the initiative process in Florida is not "wholly outside the legislative process," Doc. 76 at 2, but rather is an integral part of that process, both because it is a process by which laws are created and also because the initiative provision itself was ratified by the state legislature. Plaintiffs themselves acknowledge that the "legislative process" is broader than those provisions "adopted by the Legislature itself." Doc. 76 at 3. It is only by defining "legislative process" in the narrowest possible fashion – and one that would take it wholly

---

[3] Plaintiffs' reliance on Justice Story's comments is misplaced. Doc. 76 at 11–12. Those comments are not a judicial construction of the meaning of the Elections Clause. Moreover the Supreme Court has soundly rejected the notion that the Elections Clause grants the state legislature "an unlimited discretion in the subject" of congressional elections, as Justice Story claimed. *See, e.g.*, *Hildebrant*, 241 U.S. at 567–68 (1916).

[4] Article III, Section 20 has been precleared by the Department of Justice under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.

outside the parameters of existing law – that Plaintiffs arrive at the conclusion that the initiative process is beyond the redistricting authority given to the states in the Elections Clause.

  A. *Smiley* and *Hildebrant* **support a broad interpretation of the state legislative process, and the citizen initiative is part of Florida's legislative process.**

The Supreme Court has flatly rejected the notion that the Elections Clause requires that the creation of laws regulating federal elections be reserved solely to the legislature, stating that "the question here is not with respect to the 'body' as thus described but as to the *function to be performed*." *Smiley*, 285 U.S. at 365 (emphasis added). The Court concluded that "legislature" must be read expansively, to contemplate the state's entire "function . . . of making laws." *Id*. at 366. The dispositive question is whether the Florida constitution, in its initiative provision, contemplates a role for the people of Florida in "making laws." The answer is emphatically yes.

The Florida constitution proclaims in Article I, Section 1 that "All political power is inherent in the people." Undoubtedly, "[t]he power to amend the constitution is implicit in [that provision]." *Advisory Op. to Att'y Gen. Ltd. Marine Net Fishing*, 620 So. 2d 997, 1000 (Fla. 1993) (McDonald, J., concurring) (citing Talbot D'Alemberte, Commentary, 25A Fla. Stat. Ann. 16 (1991)). Furthermore, in Article XI, Section 3, the constitution expressly provides that the power to propose a revision or amendment to any portion of the constitution by initiative is "reserved to the people." Thus, the state constitution contemplates that the people retain power to amend their "fundamental organic law" by initiative.[5] *Browning v. Florida Hometown*

---

[5] Citing *Trombetta v. Florida*, 353 F. Supp. 575 (M.D. Fla. 1973), Plaintiffs argue that the Supreme Court's jurisprudence concerning the federal constitutional procedure for ratifying federal amendments requires that the legislature cannot be limited in the context of redistricting. But there are obvious differences between the constitutional provisions at issue with respect to ratification procedures and election regulations. Plaintiffs admit that the "legislature's function" in ratifying federal amendments "is a federal function that transcends any limitations … imposed by the people of a state." Doc. 76 at 9 (quoting *Trombetta*, 353 F. Supp. at 578). In stark contrast, under *Smiley* and *Hildebrant*, in the context of regulating elections, the legislature

7

*Democracy, Inc.*, 29 So. 3d 1053, 1063 (Fla. 2010). The people exercised that right in overwhelmingly voting to place Article III, Section 20 in the Florida constitution.

Plaintiffs nonetheless attempt to parse the term "legislative process" by arguing that Article III, Section 20 sets out "legal principles" rather than "law," Doc. 76 at 7, and therefore cannot be part of the "legislative process." This bizarre claim evinces a fundamental misunderstanding of the supremacy of state constitutions over state laws. Plaintiffs' reliance on *In re Advisory Opinion to Attorney Gen. ex rel. Limiting Cruel & Inhumane Confinement of Pigs During Pregnancy*, 815 So. 2d 597 (Fla. 2002), in support of their position that the initiative process is "completely separate" from the legislative process, is utterly misplaced. Doc. 76 at 6–7. The Florida Supreme Court was emphatically not characterizing the initiative process as producing principles rather than law. The concurring opinion was writing separately to express a *policy preference* that the constitution be reserved for "fundamental *laws*," rather than laws regarding the confinement of pigs. 815 So.2d. at 601. Regardless, in either instance the initiative enables lawmaking by the people.

Straining again, Plaintiffs claim that *Browning v. Florida Hometown Democracy, Inc.*, 29 So. 3d 1053 (Fla. 2010), stands for the proposition that the initiative does not enable lawmaking, as it was "not created to allow citizens' direct participation in legislation." Doc. 76 at 6–7. But Plaintiffs miss the forest for the trees. Simply because the initiative provision is limited to *constitutional* lawmaking does not mean that it is not part of the state's legislative process. Indeed, *Browning* states that the initiative "provide[s] the people of Florida a narrow but direct voice in amending their fundamental organic *law*." *Id*. at 1063.

---

remains obligated to comply with the limitations imposed by the people through their constitution.

The precedent cited by Plaintiffs therefore actually supports Defendants' argument that not only is the initiative part of the legislative process in that it produces "laws," but also it produces constitutional amendments, which are "the supreme law of Florida," *Lane*, 698 So. 2d at 263. As part of Florida's supreme law, Article III, Section 20 acts as a limitation on legislative power, *Crist v. Florida Ass'n of Criminal Defense Lawyers, Inc.*, 978 So. 2d 134, 141–42 (Fla. 2008), and the legislature is bound by it when producing a redistricting plan.

**B.     The initiative power was proposed by the legislature, making it closer to the legislative process than the people's veto upheld in *Hildebrant*.**

Even assuming that, as a matter of law, the legislature's control over the adoption of Article III, Section 20 bears on its constitutionality under the Elections Clause – which it does not – Plaintiffs' claim that Florida's "initiative process . . . exists wholly outside the legislative process" is wrong as a matter of fact as well. Doc. 76 at 2. The initiative provision came into the Florida constitution as a result of legislative action.

Plaintiffs concede that the legislature has authority to delegate its redistricting powers. Doc. 76 at 15 n.12; *see also Smith v. Clark*, 189 F. Supp. 2d 548, 558 n.13 (S.D. Miss. 2002), *aff'd*, 538 U.S. 254 (2003). When attempting to claim their interpretation of the Elections Clause would not upset dozens of state constitutional provisions, Plaintiffs distinguish Article III, Section 20 from the New Jersey state redistricting commission because the New Jersey commission was *created by the state legislature* as a delegation of its redistricting power. Doc. 76 at 15. Under the same logic, the Florida legislature created the initiative process that Florida voters used to add congressional redistricting standards to the constitution. Plaintiffs conveniently ignore that in 1968, it was the Florida legislature that placed an amendment on the ballot to delegate constitutional lawmaking power to the people through the initiative process. Doc. 74 at 13 & n.5.

9

In fact, the initiative power in Florida has a much closer connection to what Plaintiffs narrowly define as the "legislative process," Doc. 76 at 6, than the referendum at issue in the *Hildebrant* case upon which Plaintiffs primarily rely. The Florida congressional redistricting provision was adopted using the initiative power engendered by the Florida legislature and given directly to the people of Florida. In contrast, the *Hildebrant* referendum veto was one of a package of constitutional amendments proposed by a constitutional convention, not the state legislature itself. Indeed, the Ohio state legislature neither ratified nor voted on the constitutional amendment that created the people's veto at issue in *Hildebrant*. Doc. 74 at 6–7 & n.2. The Ohio state legislature's only involvement was in proposing a referendum vote on whether to have a constitutional convention. In effect, Plaintiffs ask this court to insulate the legislature from its 1968 decision to suggest that lawmaking authority be delegated to the people. Nothing in the Elections Clause requires this result.[6]

## CONCLUSION

For the foregoing reasons, Plaintiffs' and Plaintiff-Intervenor's joint motion for summary judgment should be denied and Defendant's and Defendant-Intervenors' cross-motions for summary judgment should be granted.

---

[6] At the end of their brief, Plaintiffs make a half-hearted argument that even if Article III, Section 20 had been enacted by the state legislature, it still would not be a valid regulation of the "time, place, and manner" of holding elections. Doc. 76 at 17. In effect, Plaintiffs contend that Article III, Section 20 is an anti-incumbent measure that will compel the legislature to draw them out of their districts. Leaving aside the fact that no incumbent has a vested right to her district, much less her seat, Article III, Section 20 is *entirely* outcome-neutral. It expressly prohibits districting in order to favor or disfavor incumbents or political parties and imposes neutral and traditional redistricting standards. Doc. 74 at 15. Plaintiffs do not, and cannot, offer any evidence to show how "traditional districting principles," *Shaw v. Reno*, 509 U.S. 630, 647 (1993), such as compactness, contiguity, respect for geographical and political boundaries, and preservation of minority voting strength will be "outcome determinative" with respect to the election or defeat of any given candidate. Article III, Section 20 is thus fundamentally different from the provisions considered in *Cook v. Gralike*, 531 U.S. 510 (2001) and *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).

Respectfully submitted this twenty-fourth day of June, 2011,

/s/ Stephen F. Rosenthal
Stephen F. Rosenthal
Fla. Bar No. 0131458
Podhurst Orseck, P.A
City National Bank Building
25 W. Flager Street, Suite 800
Miami, FL 33130-1780
Telephone: 305-358-2800
Facsimile: 305-358-2382
Email: srosenthal@podhurst.com

Michael B. DeSanctis
Paul M. Smith
Jenner & Block, LLP
1099 New York Ave NW, Suite 900
Washington, DC 20001
Telephone: 202-639-6000
Facsimile: 202-639-6066

J. Gerald Hebert
191 Somervelle Street, #415
Alexandria, VA 22304
Telephone: 703-628-4673

***Attorneys for Intervenors Leon Russell, Patricia T Spencer, Carolyn H Collins, Edwin Encisco, Stephen Easdale, Florida State Conference of NAACP Branches and Democracia Ahora***

/s/ M. Laughlin McDonald
M. Laughlin McDonald
American Civil Liberties Union Foundation
230 Peachtree Street, NW, Suite 1440
Atlanta, GA 30303
Telephone: 404-523-2721
Email: lmcdonald@aclu.org

Randall C. Marshall
American Civil Liberties Union Foundation
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Telephone: 786-363-2700
Facsimile: 786-363-1108

***Attorneys for American Civil Liberties Union of Florida; Howard Simon, Benetta M. Standly, Susan Watson, and Joyce Hamilton Henry***

/s/ Jon L. Mills
Jon L. Mills (admitted *pro hac vice)*
Fla. Bar No. 148286
Boies, Schiller & Flexner LLP
100 Southeast Second Street, Suite 2800
Miami, FL 33131
Telephone: 305-539-8400
Facsimile: 305-539-1307
Email: jmills@bsfllp.com

Joseph W. Hatchett
Fla. Bar No. 34486
Akerman Senterfitt
106 East College Avenue, 12th Floor
Tallahassee, FL 32301
Telephone: 850-224-9634
Facsimile: 850-222-0103
Email: Joseph.hatchett@akerman.com

Stuart H. Singer
Fla. Bar No. 377325
ssinger@bsfllp.com
Carl E. Goldbarb
Fla. Bar No. 125891
cgoldfarb@bsfllp.com
Boies, Schiller & Flexner LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: 954-356-0011
Facsimile: 954-356-0022

Karen C. Dyer
Fla. Bar No. 716324
kdyer@bsfllp.com
Gary K. Harris
Fla. Bar No. 0065358
gharris@bsfllp.com
Boies, Schiller & Flexner LLP
121 South Orange Avenue, Suite 840
Orlando, FL 32801
Telephone: 407-425-7118
Facsimile: 407-425-7047

***Attorneys for the State Legislators***

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically served through the Court's CM/ECF system, unless otherwise noted, this twenty-fourth day of June, 2011 to the following:

Stephen M. Cody
stcody@stephencody.com
16610 SW 82 Court
Palmetto Bay, FL 33157
Telephone: 305-416-3135
Facsimile: 305-416-3153
stcody@stephencody.com

*Attorney for Plaintiffs Diaz-Balart and Corrine Brown*

George N. Meros, Jr.
gmeros@gray-robinson.com
Allen C. Winsor
awinsor@gray-robinson.com
Gray Robinson P.A.
Post Office Box 11189
Tallahassee, FL 32302-1189
Telephone: 850-577-9090
Facsimile: 850-577-3311

Harry O. Thomas
Fla. Bar No. 195097
Radey, Thomas, Yon & Clark, P.A.
301 S. Bronough Street, Suite 200 (32301)
Post Office Box 10967
Tallahassee, FL 32302-2967
Telephone: (850) 425-6654
Facsimile: (850) 425-6694
Email: hthomas@radeylaw.com

*Attorney for Defendant Kurt Browning, in his official capacity as Secretary of State of Florida*

Miguel De Grandy
mad@degrandylaw.com
800 Douglas Road, Suite 850
Coral Gables, Florida 33134-2088
Telephone: 305-444-7737
Facsimile: 305-443-2616

*Attorney for Plaintiff-Intervenor Florida House of Representatives*

/s/ Stephen F. Rosenthal
Stephen F. Rosenthal